COUNTY COURT—ONONDAGA COUNTY,

June, 1913.

## PEOPLE v. DELAWARE, L. & W. RY. CO.

(143 N. Y. Supp. 159.)

WEIGHTS AND MEASURES (§ 5)—SALE OF COAL—CERTIFICATE OF WEIGHT.
  Laws 1911, c. 825, § 384, which makes it a misdemeanor to deliver
  coal, without also delivering to the purchaser a ticket stating the
  weight thereof, requires the delivery of the ticket, not only where
  a sale is made to the ultimate consumer, but also where made to a
  retail dealer.

APPEAL from Court of Special Sessions.

The Delaware, Lackawanna & Western Railway Company
was convicted of violating Laws 1911, c. 825, § 384, by failing
to deliver tickets for coal sold, and appeals.  Affirmed.

*Charles V. Byrne,* of Syracuse, for appellant.

*George H. Bond,* Dist. Atty., of Syracuse, for the People.

Ross, J.  The section in question reads as follows:

" Sec. 384.  Delivery Tickets.  No person, firm or corporation deliver-
ing coal, coke or charcoal shall deliver or cause to be delivered any
quantity or quantities of coal, coke or charcoal, without each such de-
livery being accompanied by a delivery ticket, and a duplicate thereof,
on each of which shall be in ink, or other indelible substance, distinctly
expressed in pounds the quantity or quantities of coal, coke or charcoal
contained in the cart or wagon or other vehicle used in such delivery,
with the name of the purchaser thereof and the name of the dealer
from whom purchased.  One of such tickets shall be delivered to the
purchaser specified thereon, and the other of such tickets shall be re-
tained by the seller."

There is no dispute as to the facts, which are very simple. The defendant is a foreign corporation engaged in mining and shipping coal to various points, and has an office and yards for the storage of coal in Syracuse, N. Y.  The Fred R. Peck Company is engaged in the city of Syracuse in dealing in coal and delivering the same as ordered to its customers.  An employé of the Fred. R. Peck Coal Company brought to the defendant an order for one ton of coal.  He handed the order to an employé of the defendant, had his wagon weighed on the scales in the yard of the defendant, drove to the coal shute, and without any assistance loaded his wagon with the coal he desired, then had the coal and wagon weighed, and started to deliver the coal to a customer of the Fred R. Peck Coal Company.

No ticket was given to the Fred R. Peck Coal Company's employé and no question is raised but that the Fred R. Peck Company intended and subsequently did deliver a ticket to its customer, so that the question narrowly presented is whether the statute in question requires the delivery of the ticket and duplicate mentioned in the statute by the wholesale to the retail dealer; it being the contention of the defendant that the statute in question was intended only as a protection to the ultimate consumer, in other words the man who burns the coal, and, of course, in this case the defendant was under no statutory obligation or duty to Mr. Buckley, the customer of the Fred R. Peck Company.

The defendant advances an ingenious argument that, as the statute refers " to the cart, wagon or other vehicle used in such delivery," the case of delivery from other receptacles is excluded.  The above words of description do not necessarily mean the cart, etc., owned or controlled by the seller, but mean the cart used in such delivery, by whomsoever owned or controlled.  In other words, the purchaser has the same need of protection, whether the coal is loaded into his wagon or into his cellar.  I know of no sufficient reason why the intermediate

dealer should not be protected.  There is certainly nothing in the statute that indicates that the small dealer should not be protected as well as the large consumer.  There is as much necessity for protecting the small dealer, who buys a few tons to retail in small quantities, as there is to protect the large manufacturer, who presumably has means of weighing the coal and protecting himself.

The language of the statute is very explicit, and admits of no reasonable interpretation, except that every sale shall be accompanied by a delivery ticket and duplicate thereof, one of which shall be delivered to the purchaser.  In this case the purchaser was the Fred R. Peck Company.  Incidentally it may be stated that there was no reason why the Fred R. Peck Company in the case under consideration could not have consumed the coal.  Except that the company is engaged in dealing in coal, no fact was brought home to the defendant that indicated that such was not the case.

Judgment affirmed.

---

### NOTE ON FALSE WEIGHTS AND MEASURES.

**At Common Law.**

At Common Law to sell by false weights and measures was an indictable offense.  Commonwealth v. Warner, 6 Mass. 72.

At Common Law the purpose on the part of the seller to cheat the buyer and do wrong to the latter by reason of the use of false weights and measures was regarded as being involved in such cases, notwithstanding the fact that the distinguishing feature of the crime, is that it is a wrong affecting the public at large.  Blanchard v. State, 3 Ind. App. 3, 395.

The fraudulent intent under the Common Law was a necessary ingredient of the crime.  State v. Perry, 50 N. C. 252.

The Common Law has become merged in the Statute Law in almost all jurisdictions.  Commonwealth v. Ramsey, 68 Southwestern 1098.